United States District Court
District of Connecticut

**Yan Du, Elika Shams, Mengni He,**
and **Stephen Azu**, on behalf of
themselves and others similarly situated,
*Plaintiffs*,

*v.*

**United States Department of
Homeland Security**,

**Kristi Noem**, Secretary of the
Department of Homeland Security, and

**Todd Lyons**, Acting Director of
Immigration and Customs Enforcement,
*Defendants*.

No. 25-cv-_____

April 24, 2025

**Complaint**

1. In early April 2025, as the end of the semester approached on university campuses throughout the United States, Defendant United States Department of Homeland Security and its agents began unilaterally and inexplicably terminating the F-1 student status of hundreds of international students and Optional Practical Training (OPT) participants across the country. This was then reflected in the Student Visitor and Information System ("SEVIS"), used by administrators since 1996 to track students on F-1 and other non-immigrant visas.

2. At least 53 of the affected students are affiliated with Connecticut institutions.[1] Plaintiffs are four of these students. Practically overnight, they found out from their

---

[1] Eddy Martinez, *Four Connecticut Students with Visas in Jeopardy Sue Federal Government*, CT Mirror (Apr. 21, 2025), https://ctmirror.org/2025/04/21/ct-student-visas-lawsuit/; Natasha Sokoloff, *Bodies vanishing': How Trump's Abrupt Visa Revocations Have Stoked Fear at CT Universities*, Conn. Post (Apr. 20, 2025), https://www.ctpost.com/news/education/article/international-students-visa-revoked-fear-trump-ct-20276965.php; Emilia Otte, *CT Students' Visas Revoked: As Details Emerge, Fears Escalate*, CT Mirror (April 17, 2025), https://ctmirror.org/2025/04/17/ct-student-visas-revoked-details/

1

universities that they had lost their F-1 student status—with no notice, warning, or meaningful explanation from Defendants.

3. The F-1 status terminations have significantly disrupted Plaintiffs' studies, training, and careers. They have generated rampant distress and fear, including of detention and removal proceedings. They have interrupted students' critical medical and scientific research. They have prevented students from working – including doing work that is necessary for their programs – and receiving income that they need to live. And because they bar Plaintiffs from making necessary progress towards their degrees or training, ironically, the terminations are day by day forcing students in compliance with their status *out* of compliance.

4. This lawsuit challenges Defendants' actual or functional termination of Plaintiffs' and the proposed class members' F-1 student status. Defendants still have not offered any meaningful explanation of what happened, but there is no way to square the terminations with the applicable regulations: 8 C.F.R. § 214.1(d)), 8 C.F.R. § 214.1(e)-(g), and 8 C.F.R § 214.2(f)). Simply put, being "identified in criminal records check" [sic] or having a visa revoked – the generic rationale provided to the universities affiliated with the four plaintiffs and most other potential class members – does not and cannot justify unilateral termination of student status in the United States.

5. Plaintiffs' injuries are real and mounting. Instead of gearing up for final exams, pursuing their research, seeking out practical training, and even obtaining their hard-earned degrees, Plaintiffs and the potential class members are lying low with an uncertain future. They seek recourse in this Court.

## Jurisdiction and Venue

6. This Court possesses subject matter jurisdiction over the plaintiffs' claims by means of 28 U.S.C. §§ 1331 (federal question) and 1346 (federal defendant), and 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act).

7. Defendants have waived their sovereign immunity. 5 U.S.C. § 702.

8. Venue is proper in the District of Connecticut under 28 U.S.C. § 1391 as Plaintiffs reside in Connecticut.

## Parties

9. Plaintiffs Yan Du, Elika Shams, Mengni He, Stephen Azu and the proposed class members are students affiliated with educational institutions in Connecticut and affected by Defendants' unlawful termination of F-1 student status.

10. Plaintiff Yan Du is a citizen of China and a sixth-year Ph.D. candidate in Chemical and Environmental Engineering at Yale University. She has just defended her dissertation and expects to graduate in the winter of this year. She is currently applying to jobs, as she should be eligible to stay in the United States for up to three years of Optional Practical Training. Yan was notified of the termination of her SEVIS status on April 4, 2025. The termination might affect her ability to successfully obtain the Ph.D. she has worked so hard for, and will certainly prevent her from pursuing OPT, which is an essential part of her career development and future plans.

11. Plaintiff Elika Shams is a citizen of Iran and a second-year Ph.D. candidate in Biomedical Engineering at the University of Connecticut ("UCONN"). Until her

termination, she was enrolled in six credits of coursework and conducting public health research into computational modeling of biological materials as a Graduate Research Assistant in a lab. On April 10, 2025, UCONN notified Elika that her status had been terminated in SEVIS. Without student status, Elika is unable to continue any of her coursework or research, nor receive the income on which she relies to live.

12. Plaintiff Mengni He is a citizen of China and a fourth-year Ph.D. student in Experimental Pathology at Yale University. She has completed her coursework and teaching assistant requirement. Her primary focus at this point is her research, which she needs in order to complete her Ph.D. On April 9, Yale informed Mengni that her status had been terminated in SEVIS. Since that time, she is no longer able to receive financial support from her doctoral program – her sole income – and has had to stop going to her lab and conducting her research. Without student status, she does not know how she will progress in her program or fulfill her career goals.

13. Plaintiff Stephen Azu is a citizen of Ghana. He is a former actuarial science master's student at UCONN who graduated in August 2024. Since last fall, he has been employed by UCONN in a 12-month OPT position as a research analyst in the Goldenson Center for actuarial science. He hopes to either begin a job on a STEM OPT extension – for which he was eligible – or begin his Ph.D. in statistics at UCONN. Because of the termination, he has had to stop his work (which threatens his compliance with OPT) and will not be able to either continue on OPT or enroll in the Ph.D. program to which he was accepted.

14. Defendant U.S. Department of Homeland Security ("DHS") is the federal agency responsible for F-1 student status management and is an 'agency' within the meaning

of the APA, 5 U.S.C. § 551(1). DHS oversees its component agencies, including U.S. Immigration and Customs Enforcement.

15. Defendant Noem is the current head of the Department of Homeland Security. She is sued in her official capacity.

16. Defendant Lyons is the acting head of Immigration and Customs Enforcement. He is sued in his official capacity.

## Facts

17. F-1 status is codified at Immigration and Nationality Act at 8 U.S.C. § 1101(F)(*i*). It is for people who do not intend to permanently reside in America (so-called 'non-immigrants'), but are granted permission to remain in the United States while "pursu[ing] a full course of study . . . at an established . . . university" that has been approved to enroll the student. 8 U.S.C. § 1101(F)(i).

18. That course of study may include or lead to permissible employment periods including "optional practical training" (OPT), which supplements the classroom with hands-on experience. *See generally* 8 C.F.R. § 214.2(f)(10). OPT typically occurs at the end of the completion of a student's studies, and may be paid or unpaid. *Id*.

19. In addition, "[c]ertain F-1 students who receive science, technology, engineering, and mathematics (STEM) degrees may apply for a 24-month extension of their post-completion" OPT. USCIS, *Optional Practical Training Extension for STEM Students (STEM OPT)*[2].

---

[2] https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-extension-for-stem-students-stem-opt.

20. F-1 status is not dependent on current possession of an F-1 visa. A person whose F-1 visa is revoked remains lawfully present in the United States and is under no compulsion to leave; they simply may be denied entry to the country if they exit and attempt to return.

21. Indeed, ICE has emphasized that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."

22. There are limited ways that F-1 status holders can lose F-1 student status before completing their course of study.

23. Permissible status-ending reasons fall into two buckets: student-driven "failure to maintain status," or agency-driven "termination of status."

24. The first bucket comprises acts or omissions by the *student*, collectively referred to as 'failure to maintain status.'

25. There are <u>four</u> acts or omissions in this bucket. Under 8 C.F.R. § 214.2(f)(5), a student fails to maintain status if they do not make "normal progress toward completing a course of study." 8 C.F.R § 214.2(f)(5)(i). A student may also fail to maintain status by undertaking "[a]ny unauthorized employment[,]" by "willful[ly] fail[ing] to provide full and truthful information requested by DHS[,]" or by suffering "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(e)-(g) (delineating certain conduct by nonimmigrant visa holders that "constitute failure to maintain status").

26. Acts or omissions in the first bucket are typically monitored and determined by a Designated School Official ("DSO"), the person who "monitors, advises, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

27. The second bucket is agency-driven "termination of status." This bucket comprises the three acts by which the *government* may terminate F-1 status: (1) when a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) if "a private bill to confer permanent resident status on such alien" is introduced in Congress; or (3) after "notification in the Federal Register," on the basis of "national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

28. Notably, neither of the two buckets of permissible status termination reasons refers to a visa revocation. This is because, as described above, the revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status.

29. In 1996, Congress mandated the creation of a digital system through which the government and F-1-authorized educational institutions could enter and track data reflecting the existence and status of the nation's myriad F-1 students. Pub. L. 104-208, § 641. That system is the "Student and Exchange Visitor Information System," or SEVIS.

30. The system "enables the Secretary of Homeland Security to monitor the progress and status of lawfully admitted F, M, and J visa category nonimmigrants residing in the United States, and to analyze all the information gathered for purposes of homeland security, law enforcement, immigration control and other mission-related functions." Dep't of Homeland Security, *Notice of Privacy Act System of Records*, 70 Fed. Reg. 14477, 14478 (Mar. 22, 2005).

31. Participation in SEVIS is mandatory, and its data "shall be provided by institutions of higher education, other approved educational institutions, or exchange visitor

programs as a condition of" the continued ability to enroll F-1 students. 8 U.S.C. § 1372(d)(1).

32. SEVIS is the sole method by which universities issue F-1 students their physical proof of status, the Form I-20. 8 C.F.R. § 214.2(1)(iii).

33. Through SEVIS, schools may apply for authorization to sponsor each F-1 student, and must report to the government things like "[a]ny student who has failed to maintain status or complete his or her program," "[a]ny student who has graduated early or prior to the program end date listed on SEVIS Form I–20," or "[a]ny disciplinary action taken by the school against the student as a result of the student being convicted of a crime." 8 C.F.R. § 214.3(g)(2)(ii).

34. The government, on the other hand, uses SEVIS to "monitor the progress and status of lawfully admitted F/M/J nonimmigrants residing in the United States, to ensure they comply with the obligations of their U.S. admittance," and, "to identify and *act on potential violations* by schools, sponsors, and F, M, or J nonimmigrants." Dep't of Homeland Security, *Notice of Privacy Act System of Records*, 75 Fed. Reg. 412, 413 (Jan. 5, 2010) (updating Privacy Act notice to disclose next-generation SEVIS release, which "propose[d] the collection of additional information on students") (emphasis added).

35. The defendants also use SEVIS to communicate the approval or denial of schools' certifications and periodic re-certifications to participate in the F-1 program. 8 C.F.R. § 214.3(e).

36. SEVIS is thus the authoritative way that the government and participating universities communicate with each other on the subject of F-1 status.

## The Student-Plaintiffs' Status Terminations

**Yan Du**

37. Yan Du is an F-1 student at Yale University who is about to complete her Ph.D. program in Chemical and Environmental Engineering.

38. Yan is a citizen and national of China.

39. Yan came to the United States on an F-1 visa to enroll in undergraduate studies at the University of Michigan. She studies water use and the energy grid, and recently defended her dissertation successfully.

40. As a Ph.D. student at Yale, in spring 2022, Yan returned home to visit family. While there, she fell ill, and a miscommunication with Yale resulted in Yale mistakenly terminating her status in SEVIS. Working with the university, Yan was able to rectify the mistake, and Yan's status was restored in December 2022. She resumed her studies.

41. Yan is slated to graduate in winter 2025, at which point she hopes to remain in the United States on OPT and work in her chosen field. She is actively applying for jobs. After a 12-month OPT term, she would likely also be eligible for the STEM OPT extension, which allows students in certain STEM fields to extend their OPT for another 24 months.

42. On April 4, 2025, Yan received a call from Yale's Office of International Student & Scholar Services (OISS). OISS staff told her F-1 student status in SEVIS had been terminated.

43. According to Yale, the reason given for the status termination in SEVIS was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal

records check and/or has had their VISA revoked. SEVIS record has been terminated."

44. To her knowledge, Yan's visa has not been revoked. Nor has Yan been arrested for, or convicted of, a crime.

45. Other than this one line, Yan received zero notice, explanation, or information from the government as to why her F-1 status had been terminated—including how her previous, mistaken SEVIS status termination, which was fixed in 2022, could justify terminating her status now (if that is indeed the reason).

46. Yan hopes to be able to graduate as scheduled, but in light of the termination of her F-1 student status, she is not sure. This has caused her tremendous stress and anxiety at what should be a happy time: the brink of completion of a long and rigorous Ph.D. program.

47. Yan's future plans rested entirely on OPT, but her eligibility for OPT is now in jeopardy.

48. Yan is also concerned about being detained and subject to removal proceedings.

**Elika Shams**

49. Elika Shams is an F-1 student at UCONN, currently in her second year of a biomedical engineering Ph.D. program.

50. She is a citizen and national of Iran.

51. Elika came to the United States on an F-1 visa to study at UCONN in December 2023.

52. As part of Elika's Ph.D. program, she works as a graduate research assistant in a biomedical engineering lab, doing public health- and medical-related research. The stipend for her work in the lab is her sole income.

53. Elika has never been arrested.

54. Prior to her current F-1 student visa, she had another F-1 student visa which was canceled by CBP at the Boston airport based on a misunderstanding that was later cleared by Elika at the U.S. Consulate in Ankara, Turkey. At that point, Elika secured a new F-1 student visa to attend UCONN.

55. On December 31, 2024, Elika was rushing to meet a connecting flight when Frontier Airlines staff refused to let her board unless she paid $100 for a carry-on bag. When she questioned this, Frontier staff shut the gateway door. Elika attempted to open the door to explain she would pay, resulting in a warning from TSA.

56. Elika was enrolled in six credits for the spring semester, along with her graduate research assistant labwork.

57. On April 10, 2025, Elika received an email from UCONN's Office of International Student & Scholar Services. The email notified her that "[DHS] has terminated your SEVIS record." The message stated the reason DHS entered on SEVIS as "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

58. Elika was further informed by UCONN on April 15, 2025 that she "may not engage in UConn academic activity while [her] SEVIS record is in terminated status."

59. Without the ability to continue her studies and research, Elika risks actually being out of compliance with her program, and thus forcibly losing her F-1 status.

60. She has also lost her sole income.

61. In addition to the loss of her career aspirations, Elika fears being detained and placed in removal proceedings.

**Mengni He**

62. Mengni He is fourth-year Ph.D. candidate in Experimental Pathology at Yale University.

63. Mengni is a native and citizen of China.

64. Mengni began her program of study at Yale in August 2021.

65. Previously, Mengni completed her undergraduate studies at the University of Rochester, and her master's degree at Johns Hopkins University.

66. Mengni is a member of a pathology research lab at Yale. Mengni's research focuses on cancer biomarker evaluations and clinical assay developments.

67. Mengni has completed the coursework required for her degree, as well as her teaching assistant requirements. She is now focused primarily on her research, which she must progress in order to write her dissertation and receive her Ph.D.

68. Mengni hopes to graduate in the next year and a half.

69. While an undergraduate in New York in 2016, Mengni received a driving-related violation that was not a criminal charge. She paid a fine, had a brief license suspension, and completed programming.

70. Around the same time, she returned home to visit China. Her visa was revoked, but she was soon able to get it reinstated.

71. Mengni returned to the United States in July 2016 and resumed her studies. Between then and January 2020, she traveled in and out of the United States five times using the reinstated visa, with no issues.

72. On April 9, 2025, Mengni was informed by Yale that her F-1 status had been terminated. According to Yale, the reason given was "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

73. As a result of the termination, Mengni is unable to continue her research.

74. Mengni is also unable to receive her doctoral stipend, which is her only source of income.

75. In light of the termination, Mengni's plans to complete her research, and thus her Ph.D., are in jeopardy.

76. Mengni is also concerned about possible immigration detention and deportation.

**Stephen Azu**

77. Stephen Azu works at UCONN as an analyst in the Goldenson Center for Actuarial Science, on OPT.

78. Stephen is a citizen and native of Ghana.

79. Stephen came to the United States on an F-1 visa in August 2022 in order to study at UCONN. He successfully completed his studies, and received his master's degree in Actuarial Science from UCONN in August 2024.

80. In November 2022, Stephen was driving an inebriated friend home when police stopped Stephen for speeding. Stephen had a valid driver's license from Ghana, but was not carrying it. When he saw a judge the following day, the judge confirmed that Stephen intended to get a U.S. license – which he immediately did – and asked Stephen to pay $100, which he also did. That was the end of his interaction with the court.

81. Other than this, Stephen has received one speeding ticket and one parking ticket. Using his visa, he re-entered the United States twice since he first arrived, without any issue. Most recently, he entered the United States in the summer of 2024, after a trip home to Ghana.

82. Through the 12-month Optional Practical Training (OPT) program, Stephen has been employed at UCONN as an analyst, an unpaid position, since the fall of 2024. His employment was for one year, and was scheduled to end in late September 2025.

83. Stephen is actively seeking paid employment through the 24-month OPT STEM extension. He has also been admitted to UCONN's Ph.D. program in statistics. If he does not get a job, his plan is to begin his Ph.D. this fall.

84. On April 9, 2025, UCONN's Office of International Student & Scholar Services notified Stephen that his status was terminated. The message stated the reason DHS entered on SEVIS as "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

85. UCONN staff further told Stephen he must stop working, and he did.

86. On April 14, Sam received an email from the U.S. consulate in Accra telling him that his visa had been revoked. The message warned that Sam could be deported, and added: "Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin."

87. Given the termination, Stephen's career plans and studies are entirely in jeopardy.

88. Stephen is also concerned about the possibility of being detained and placed in removal proceedings.

## Class Action Allegations

89. Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class; the class is so numerous that joinder of all members is impractical; Plaintiffs' claims are typical of the claims of the class; and Plaintiffs will fairly and adequately protect the interests of the class. Defendants have acted on grounds that apply generally to the class, so that relief under the Administrative Procedure Act and declaratory relief are appropriate with respect to the class as a whole.

90. Plaintiffs seek to represent the following class:

> All current or future students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in Connecticut who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants on or after March 1, 2025 where either:
>
> (1) Defendants' student status termination was neither
>     (i) based on the criteria set forth in 8 C.F.R. § 214.1(d),
>     (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor
>     (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i),
>
> or
>
> (2) Defendants
>     (i) did not directly notify the students of the reason for the termination of F-1 status;
>     (ii) did not specify the specific factual reason for the termination under the regulations governing student status termination (see 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (see 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); or
>     (iii) did not provide the students/graduates with an

opportunity to challenge the termination of student status.

91. The proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a) and is readily ascertainable.

92. The proposed class already includes scores of students and OPT participants—and counting—whose F-1 student status (as reflected in the SEVIS system) has been unilaterally terminated by Defendants without compliance with the appropriate regulatory criteria and without due process, which is sufficient to satisfy numerosity.

93. The class raises common legal questions that will generate common answers, including whether Defendants' termination of student status without meeting the criteria for the applicable regulation governing student status termination (*see* 8 C.F.R. § 214.1(d)) and the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)) violates the law. The class also raises common factual issues because proposed class representatives and class members are subject to the same practice where student status was terminated without due process and without meeting the appropriate regulatory criteria governing student status termination (*see* 8 C.F.R. § 214.1(d)) or governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)).

94. Here, the interests of the proposed class representatives and the proposed class members are aligned. The proposed class representatives are members of the class and have suffered the same injury as the proposed class members, namely that the Defendants have revoked student status without meeting the criteria of the applicable regulations and without complying with due process.

95. Proposed class representatives are also adequately represented by a team of attorneys with significant experience in civil rights litigation, immigration law, criminal law, and class actions.

96. The proposed class also satisfies Fed. R. Civ. P. 23(b)(2). Defendants have acted on grounds generally applicable to the proposed class, thereby making final declaratory, APA, and injunctive relief appropriate with respect to the class as a whole.

**Claims for Relief**

**Count 1:**
**Violation of the Administrative Procedures Act**

97. Defendants' actual or functional termination of Plaintiffs' and class members' F-1 student status is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order").

98. Defendants' actual or functional termination violates the Administrative Procedure Act (APA) and must be set aside pursuant to 5 U.S.C. § 706(2)(A) as "otherwise not in accordance with the law," including the regulatory regime at 8 C.F.R. § 214.1(d)-(g) and 8 C.F.R. § 214.2(f). Defendants have no statutory or regulatory authority to terminate Class Plaintiffs' and class members' student status.

99. Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study."

In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder—such as engaging in "[a]ny unauthorized employment[,]" "willful failure to provide full and truthful information requested by DHS[,]" and "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed"—constitute "a failure to maintain [student] status[.]" However, none of these conditions under either 8 C.F.R. § 214.2(f)(5) or 8 C.F.R. § 214.1(e)-(g) have occurred for Class Plaintiffs and the class.

100. Further, Defendants' ability to terminate an F-1 student status is limited by 8 C.F.R. § 214.1(d). Under this regulation, Defendants can terminate student status <u>only</u> when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. But, for Class Plaintiffs and the class, none of these criteria has been satisfied, yet their student status was revoked anyway.

**Count 2:**
**Violation of the Fifth Amendment's Due Process Clause**

101. The United States Constitution requires notice and a meaningful opportunity to be heard.

102. Defendants terminated Plaintiffs' and class members' F-1 student status system without doing each of the following: (i) directly notifying these students/graduates of the reason for the termination of F-1 student status; (ii) specifying the specific factual reason for the termination under the regulations

18

governing student status termination (*see* 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); and (iii) providing the students/graduates with an opportunity to challenge the termination of student status.

103. Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' and class members' due process rights.

**Request for Relief**

Plaintiffs request that this Court:

(1). Certify the case as a class action as proposed in the accompanying motion for class certification;

(2). Declare that Defendants' termination of Plaintiffs' and class members' F-1 student status violated the APA and Plaintiffs' Fifth Amendment due process rights;

(3). Issue a preliminary and permanent injunction requiring Defendants to restore and reinstate the F-1 student status and corresponding SEVIS immigration record for Plaintiffs and all members of the class;

(4). Issue a preliminary and permanent injunction prohibiting Defendants from, in the future, terminating the F-1 student status and corresponding SEVIS immigration record for Plaintiffs and the class members on the same basis;

(5). Issue a preliminary and permanent injunction prohibiting Defendants from terminating the F-1 student status and corresponding SEVIS immigration records for any student at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in Connecticut without: (i) directly notifying these students/graduates of the reason for the termination of F-1 student status; (ii) specifying the specific factual reason for the termination under the regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); and (iii) providing the students/graduates

with an opportunity to challenge the termination of student status.

(6). Enjoin Defendants from detaining the individual Plaintiffs pending the instant case;

(7). Award reasonable attorneys' fees and costs; and

(8). Order any further relief this Court deems just and proper.

    /s/ Jaclyn Blickley
Jaclyn Blickley (No. ct31822)
Elana Bildner (No. ct30379)
Dan Barrett (No. ct29816)
ACLU Foundation of Connecticut
765 Asylum Avenue
Hartford, CT 06105
(860) 471-8468
e-filings@acluct.org

    /s/ J. Christopher Llinas
J. Christopher Llinas (No. ct30452)
Llinas Law, LLC
553 Portland-Cobalt Road, Unit 2
Portland, CT 06480
(860) 530-1781
jcl@llinasdefense.com