**United States District Court**
**District of Connecticut**

**Yan Du, Elika Shams, Mengni He,**
**and Stephen Azu**, on behalf of
themselves and others similarly situated,
*Plaintiffs,*

*v.*

**United States Department of**
**Homeland Security**,

**Kristi Noem**, Secretary of the
Department of Homeland Security, and

**Todd Lyons**, Acting Director of
Immigration and Customs Enforcement,
*Defendants.*

No. 25-cv-_____

April 24, 2025

**Plaintiffs' Emergency Motion for**
**Class Certification and Appointment of Class Counsel**

Student-plaintiffs Yan Du, Elika Shams, Mengni He, and Stephen Azu bring the following emergency motion on behalf of themselves and all those similarly situated, for class certification, appointment of class representatives, and appointment of class counsel. As detailed in their complaint and motion for a temporary restraining order, the plaintiffs and their fellow class members are foreign citizens who were granted permission to study in the United States under its F-1 status program. Through their affiliation with various Connecticut universities, they have applied themselves to their studies and engaged in rigorous coursework in a variety of fields, as well as related practical training. But over the last few weeks, they have been subjected – without notice, warning, or explanation – to the sudden termination of their F-1 student status.

1

At least fifty-three students in Connecticut are in their shoes[1], not to mention thousands across the country.[2]

At the time of their termination, all of the plaintiffs and their fellow class members were in good standing with their affiliated universities. None have committed any act causing loss of their F-1 status, and none of the three reasons why the government may terminate their status on its own has transpired. Nonetheless, over the past three weeks, all got urgent emails or calls from the universities at which they study or work, notifying them that the defendants to this action terminated the students' records in SEVIS, the authoritative system used to authorize and track foreign students. The terminations were patently unlawful, carry the threat of removal from the United States, and caused the universities to bar the student-plaintiffs from completing what is necessary for their coursework or training, which will in short order cause the defendants to deem them as violating immigration law if the defendants have not already done so.

The impact of the defendants' actions on the plaintiffs and the class members cannot be understated, despite the defendants' efforts to do so. The abrupt loss of their student status has created an avalanche of repercussions for the plaintiffs and the members of the putative class. Students have been instructed to stop attending classes at a time when many students are trying to prepare for final exams, and many for

---

[1] Eddy Martinez, *Four Connecticut Students with Visas in Jeopardy Sue Federal Government*, CT Mirror (Apr. 21, 2025), https://ctmirror.org/2025/04/21/ct-student-visas-lawsuit/; Natasha Sokoloff, *Bodies vanishing': How Trump's Abrupt Visa Revocations Have Stoked Fear at CT Universities*, Conn. Post (Apr. 20, 2025), https://www.ctpost.com/news/education/article/international-students-visa-revoked-fear-trump-ct-20276965.php; Emilia Otte, *CT Students' Visas Revoked: As Details Emerge, Fears Escalate*, CT Mirror (April 17, 2025), https://ctmirror.org/2025/04/17/ct-student-visas-revoked-details/.
[2] Caroll Alvarado, et. al, *More than 1,000 International Students and Graduates in the US Have Had Their Visas Revoked or Statuses Terminated*, CNN (Apr. 17, 2025), https://www.cnn.com/2025/04/17/us/university-international-student-visas-revoked/index.html.

graduation. Students have also been instructed not to continuing working in various teaching or research roles required of their program of study or in accordance with their Optional Training Program position. Ceasing these activities further pushes students toward being out of compliance with their programs of study, risking further issues with their student visa. Students whose F-1 status has been terminated are also at risk of detention and removal from the United States. This has caused significant anxiety and emotional distress, causing many students to shelter at home and cease participating in activities of daily living. Immediate certification will allow this Court to provide comprehensive, equitable relief to the proposed class members, all of whom have suffered the same injury when their status was terminated. Accordingly, the plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class, appoint the proposed class representatives, and appoint their counsel as class counsel.

1.   **Proposed Class Definition**

The plaintiffs seek to certify the following class:

All current or future students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in Connecticut who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants on or after March 1, 2025 where either:

(1)   Defendants' student status termination was neither
    (i)   based on the criteria set forth in 8 C.F.R. § 214.1(d),
    (ii)   because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor
    (iii)   because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i),

or

(2) Defendants
   (i) did not directly notify the students of the reason for the termination of F-1 status;
   (ii) did not specify the specific factual reason for the termination under the regulations governing student status termination (see 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (see 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); or
   (iii) did not provide the students/graduates with an opportunity to challenge the termination of student status.

Immediate certification of this class will allow the Court to grant preliminary relief to all affected students who meet the class definition through the plaintiffs' simultaneously filed Motion for a Temporary Restraining Order. This would prevent further irreparable harm to scores of students across Connecticut who find themselves living in extreme fear and uncertainty as a result of the defendants' actions.

### 2. Proposed Class Representatives

#### 2.1. Yan Du

Yan Du is an F-1 student at Yale University who is on the brink of completing a Ph.D. program in Chemical and Environmental Engineering.[3] She is a citizen and national of China. Yan came to the United States on an F-1 visa to enroll in undergraduate studies at the University of Michigan. She studies water use and the energy grid, and recently defended her dissertation successfully.

As a Ph.D. student at Yale, in spring 2022, Yan returned home to visit family. While there, she fell ill, and a miscommunication with Yale resulted in Yale mistakenly terminating her status in SEVIS. Working with the university, Yan was able to rectify the mistake, and Yan's status was restored in December 2022. She resumed her studies.

---

[3] Each named plaintiff has verified their allegations through the declarations filed with the Motion for TRO. (*See* TRO Exhibits 7, 11, 13, 17)

4

Yan is slated to graduate in winter 2025, at which point she hopes to remain in the United States on OPT and work in her chosen field. She is actively applying for jobs. After a 12-month OPT term, she would likely also be eligible for the STEM OPT extension, which allows students in certain STEM fields to extend their OPT for another 24 months.

On April 4, 2025, Yan received a call from Yale's Office of International Student & Scholar Services (OISS). OISS staff told her that her F-1 student status in SEVIS had been terminated. She was shocked. The following day, she received a follow-up email from Yale, stating that the reason for the status termination in SEVIS was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (*See* TRO Ex. 6). To her knowledge, Yan's visa has not been revoked. And Yan received zero notice, explanation, or information from the government as to why her F-1 status had been terminated—including how her previous, mistaken SEVIS status termination, which was fixed, would be sufficient to terminate her status now (if that even is the reason).

Yan hopes to be able to graduate as scheduled, but in light of the termination of her F-1 student status, she is not sure. This has caused her tremendous stress and anxiety at what should be a happy time: the brink of completion of a long and rigorous Ph.D. program. Her future plans rested entirely on OPT, but her eligibility for OPT is now in jeopardy. Instead of celebrating, she is deeply anxious and afraid, and unsure whether she will be able to realize her career aspirations. On top of this, given her loss of status, she is concerned about being either detained or deported.

### 2.2. Elika Shams

Elika Shams is an F-1 student at UCONN, currently in her second year of a biomedical engineering Ph.D. program. She is a citizen of Iran. Elika came to the United States on an F-1 visa to study at UCONN in December 2023. As part of Elika's Ph.D. program, she works as a graduate research assistant in a biomedical engineering lab, doing public health- and medical-related research. The stipend for her work in the lab is her sole income.

Elika has never been arrested. She has had one interaction with law enforcement since coming to the United States in December 2023. On December 31, 2024, Elika was rushing to meet a connecting flight when Frontier Airlines staff refused to let her board unless she paid $100 for a carry-on bag. When she questioned this, Frontier staff shut the gateway door. Elika attempted to open the door to explain she would pay, resulting in a warning from TSA. Frontier later issued Elika an apology for their staff's behavior.

Elika was enrolled in six credits for the spring semester, along with her graduate research assistant labwork. Less than a month before her semester was to end, on April 10, 2025, Elika received an email from UCONN's Office of International Student & Scholar Services. The email notified her that "[DHS] has terminated your SEVIS record." The message stated the reason DHS entered on SEVIS as "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."  The university emphasized that these actions were DHS's, not the university's: "Please note that we did not make this change." (*See* TRO Ex. 9).

UCONN's email set out several alarming-sounding courses of action for Elika in light of the termination, including that she "[c]ontact [he]r immigration attorney," and update the university with the contact information of a point person to call "in the event

6

you are unavailable." (TRO Ex. 9) It further told Elika to "STOP WORKING," as "any prior work authorization/eligibility has ended." *Id*.

On April 15, Elika was further informed by UCONN that that she "may not engage in UConn academic activity while your SEVIS record is in terminated status," including by "log[ging in] to Husky CT to access coursework," or "actively engag[ing] in academic work for your degree program." (TRO Ex. 10).

Without the ability to continue her studies and research, Elika risks actually being out of compliance with her program, and thus forcibly losing her SEVIS status. She is distressed, anxious, and feels as though all her hopes and dreams for her career have been destroyed.

### 2.3. Mengni He

Mengni He is an F-1 student Yale University, currently in her fourth year of an Experimental Pathology Ph.D. program. She is a citizen of China. Mengni came to the United States on an F-1 visa initially to study as an undergraduate at the University of Rochester. Following her graduation from the University of Rochester, Mengni completed a master's degree at Johns Hopkins University and subsequently worked in a lab at Johns Hopkins on OPT. Mengni began her Ph.D. program at Yale in 2021, with a research focus on cancer biomarker evaluations and clinical assay developments. The aim of Mengni's research is to assist physicians in making decisions on novel cancer therapies for patients with advanced stage diseases. Mengni has completed all coursework required for her degree and is now conducting research in order to write and defend her dissertation.

7

Mengni has never been arrested. She has only had one interaction with law enforcement in 2016 while an undergraduate student whereby she received a driving-related violation (not a criminal charge). Mengni paid a fine, had her license suspended for 90 days, and successfully completed programming. She has had no other interactions with law enforcement in the nine years since.

The only other issue Mengni has had with her student visa was also in 2016 when she had her visa revoked while visiting family in China. She was able to get her visa reinstated within a few months and has had no further issues.

On April 9, 2025, Mengni received a phone call from the Designated Student Officer (DSO) in the Yale Office of International Student & Scholar Services, informing her that her F-1 student status had been terminated. She received an email from the DSO the following day explaining that the termination was not Yale's doing and that her "SEVIS record ha[d] been terminated by the Department of Homeland Security." Mengni was informed that the reason cited was "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (*See* TRO Ex. 12).

Since April 10, 2025, Mengni has not been permitted to continue her research. This has caused Mengni to feel anxious about whether she will be able to complete her research and Ph.D. program. Mengni is also afraid she may be detained and removed from the United States.

### 2.4. Stephen Azu

Stephen Azu works at UCONN as an analyst in the Goldenson Center for Actuarial Science. He is a citizen and native of Ghana. He came to the United States on an F-1 visa in August 2022 in order to study at UCONN. He successfully completed his studies, and received his master's degree in Actuarial Science from UCONN in August 2024.

In November 2022, Stephen was acting as the designated driver for a friend when police stopped Stephen for speeding. Stephen had a valid driver's license from Ghana, but was not carrying it. When he saw a judge the following day, the judge confirmed that Stephen intended to get a U.S. license – which he immediately did – and asked Stephen to pay $100, which he also did. That was the end of his interaction with the court.

Other than this, Stephen has received one speeding ticket and one parking ticket. Using his visa, he re-entered the United States twice since he first arrived, without any issue. Most recently, he entered the United States in the summer of 2024, after a trip home to Ghana.

Through the twelve-month Optional Practical Training (OPT) program, Stephen has been employed at UCONN as an analyst, an unpaid position, since the fall of 2024. His employment was for one year, and was scheduled to end in late September 2025. Stephen is actively seeking paid employment through the 24-month OPT STEM extension. He has also been admitted to UCONN's Ph.D. program in statistics. If he does not get a job, his plan is to begin his Ph.D. this fall.

On April 9, 2025, Stephen received an email from UCONN's Office of International Student & Scholar Services. The email notified him that "[DHS] has terminated your SEVIS record." The message stated the reason DHS entered on SEVIS

9

as "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (*See* TRO Ex. 15)

Stephen had no idea why his F-1 status would be terminated. He was given no reason or explanation, including whether his experience in Dudley (if that was indeed the reason) would be sufficient for a status termination, if indeed that was the reason. This was surprising to him given that he had recently returned to Ghana without any issue.

As a result of the status termination, UCONN staff further informed Stephen he must stop working. He did.

On April 14, Stephen received an email from the U.S. consulate in Accra telling him that his visa had been revoked. The message warned that he could be deported, and added: "Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." (*See* TRO Ex. 16).

All of Stephen's career plans are in jeopardy, and he is unsure what to do.

### 3. Comprising at least fifty students litigating a single course of unlawful action by the defendants, the proposed class fully satisfies the Rule 23(a) criteria.

Fed. R. Civ. P 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members [] if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly

10

and adequately protect the interests of the class." Stated differently, the requirements of Rule 23(a) are "numerosity, commonality, typicality, and adequacy of representation." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp.3d 417, 435 (S.D.N.Y. 2023) (citation omitted).

### 3.1. Numerosity: Fed. R. Civ. P. 23(a)(1).

The proposed class is easily able to satisfy the numerosity requirement, demonstrating that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in this circuit have consistently held that numerosity is met by classes larger than forty members. *See Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir, 2014) ("Numerosity is presumed for classes larger that forty members"); *Rincon-Marin v. Credit Control, LLC*, No. 3"17-cv-07 (VLB), 2018 WL 1035808 at * 2 (D. Conn. Feb. 23, 2025) ("As to the numerosity requirement for class certification, the Second Circuit has recognized a class of 40 members as large enough to meet the numerosity requirement."); *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012) ("Sufficient numerosity can be presumed at a level of forty members or more, and courts do not require 'evidence of exact class size or identity of class members to satisfy the numerosity requirement.'"). It is not required that "joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 244-45 (2d Cir. 2007).

Here, the estimated number of members already in the class exceeds the forty-member threshold. Between the University of Connecticut, Yale University, Trinity

College, Quinnipiac University, and Wesleyan University, at least fifty-three students have had their F-1 status terminated in SEVIS.[4] It is also not apparent that the defendants have ceased the practice used here of terminating student's F-1 status in SEVIS without applying the applicable regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) and the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)). As such, it is likely that additional students join the class each day that the defendants' actions are allowed to continue.

### 3.2.     Commonality and Typicality: Fed. R. Civ. P. 23(a)(2),(3).

The proposed class can easily satisfy the unified commonality and typicality requirement because they allege that the defendants unlawfully terminated their F-1 student status as a standardized course of conduct. Certification is also appropriate where "there are questions of law or fact common to the class," and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2),(3).  Commonality and typicality are *so* close that our circuit has recently held that the two inquiries merge where the class's claims arise from a single course of conduct by the defendant, as pleaded here. *Elisa W. v. City of New York*, 82 F.4th 115, 128 (2d Cir. 2023).

Satisfying the two here thus depends upon the existence of "a common contention" that will "resolve an issue that is central to the validity of each one of the claims in one stroke" when this Court rules on its merits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Johnson v. Nextel Commc'ns*, 780 F.3d 128,

---

[4] *Supra* note 1.

12

137 (2d Cir. 2015) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). The common contention need not be complicated; "[e]ven a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (internal quotation omitted). *Accord Erickson v. Jernigan Capital*, 692 F. Supp. 3d 114, 126 (S.D.N.Y. 2023) ("Commonality is generally considered a low hurdle easily surmounted.") (internal quotation omitted).

The plaintiffs here have presented the Court with the most straightforward of common contentions. Through "standardized conduct of the defendant[s] towards members of the proposed class," to wit, their termination of SEVIS F-1 status records outside of the seven permissible reasons for doing so, Defendants Noem and Lyons have given the Court a unified conundrum ripe for efficient resolution by class litigation. *Easterling v. Conn. Dep't of Correction*, 265 F.R.D. 45, 52 (D. Conn. 2010).

### 3.3. Adequacy of Representation: Fed. R. Civ. P. 23(a)(4).

The named plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of the other class members." *Manker v. Spencer*, 329 F.R.D. 110, 121 (D. Conn. 2018) (internal quotation omitted). "The Court should also consider whether 'plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). "The adequacy requirement tends to merge with the commonality and typicality criteria, all of which serve as guideposts for determining

13

whether maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests to the class members will be fairly and adequately protected in their absence." *Martinez v. Avantus, LLC*, 343 F.R.D. 254, 266 (D. Conn. 2023) (quotations and citations omitted) (cleaned up).

The adequacy requirement is undoubtedly met here as the proposed class representatives have suffered identical injuries to the class based on the defendants' termination of their F-1 student status without the proper application of the applicable criteria. The proposed class representatives have no conflicting interests from the class or any defenses that would be antagonistic to the unnamed members of the class. Further, the proposed class representatives' request for equitable relief setting aside the defendants' unlawful termination of the student-plaintiffs' SEVIS status records would apply equally and benefit all class members.

The proposed class would be represented by counsel from the ACLU of Connecticut with co-counsel J. Christopher Llinas. Proposed class counsel from the ACLU of Connecticut has extensive experience litigating civil rights cases in federal court as well as in litigating class action lawsuits. *See* Exhibit 1. Attorney Llinas has extensive experience as criminal and immigration defense lawyer in Connecticut. *See* Exhibit 2. For the same reasons, counsel also satisfy the requirements of Rule 23(g) and should be appointed as class counsel.

> **4.    Because equitable relief setting aside the defendants' unlawful termination of the student-plaintiffs' SEVIS status records would apply to, and benefit, all the putative class members, the Court ought to certify them as a (b)(2) class.**

Class certification is appropriate where "the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The virtue of (b)(2) certification lies in "settling the legality of the behavior with respect to the class as a whole," *id.*, committee note (1966), and so, is proper where "a single injunction . . . would provide relief to each member of the class." *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 80 (2d Cir. 2015) (internal quotation omitted).

There is no question here that equitable relief ordering the defendants to restore wrongfully terminated SEVIS F-1 status records would benefit every member of the putative class, which has been tightly defined. Because the plaintiffs' requested relief would correct the illegality at play in the SEVIS terminations, it would at once restore all potential class members to good standing, remove impediments to their completing their approved courses, and negate their susceptibility to removal. *See*, *e.g.*, *id.* at 97 (affirming certification of (b)(2) class where "it is clear that the proposed injunctive relief sweeps broadly enough to benefit each class member"); *Alexander v. Price*, 275 F. Supp. 3d 313, 327 (D. Conn. 2017) (granting (b)(2) certification where injunction sought would order the defendant to provide a uniform procedure for review of all decisions to place any class member on "observation," rather than "in-patient" status).

## 5. Conclusion

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class, appoint the proposed Class Representatives, and appoint their counsel as Class Counsel.

Respectfully submitted,

  /s/ Jaclyn Blickley
Jaclyn Blickley (No. ct31822)
Elana Bildner (No. ct30379)
Dan Barrett (No. ct29816)
ACLU Foundation of Connecticut
765 Asylum Avenue
Hartford, CT 06105
(860) 471-8468
e-filings@acluct.org

  /s/ J. Christopher Llinas
J. Christopher Llinas (# 30452)
Llinas Law, LLC
553 Portland-Cobalt Road, Unit 2
Portland, CT 06480
(860) 530-1781
jcl@llinasdefense.com