UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YAN DU, ET AL., individually and on behalf of all others similarly situated<br>    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET AL.<br>    *Defendants*. | )<br>)<br>)   3:25-cv-644 (OAW)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING PRELIMINARY INJUNCTION

Plaintiffs Yan Du, Elika Shams, Mengni He, and Stephen Azu are international students affiliated with Connecticut universities who learned in April that Immigration and Customs Enforcement ("ICE") terminated their F–1 nonimmigrant records.  *See* Compl. ¶¶ 1–2, ECF No. 1.  On April 24, 2025, Plaintiffs filed a complaint and a motion for injunctive relief, Pls.' Mot. for TRO, ECF No. 2 ("Pls.' Mot."), against the United States Department of Homeland Security ("DHS"), DHS Secretary Kristi Noem, and Acting Director of ICE Todd Lyons (together "Defendants") on behalf of themselves and at least 53 similarly situated individuals (the "putative class").[1]  On April 28, 2025, the court granted a temporary restraining order as to the named Plaintiffs, withholding judgment on injunctive relief as to the putative class.  TRO, ECF No. 17.  On May 16, 2025, the court held a hearing during which the parties argued whether the terms of the TRO should convert into a preliminary injunction.  For the reasons discussed herein, the court **GRANTS a PRELIMINARY INJUNCTION** as to the named Plaintiffs.

---

[1] Secretary Noem and Acting Director Lyons are sued in their official capacities.  Compl. ¶¶ 15–16.

1

I.  **BACKGROUND**

   A. **Statutory Context**

Under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(F)(i), foreign individuals may enroll in programs at academic institutions in the United States as F–1, nonimmigrant students.[2]  See 8 C.F.R. § 214.1(a)(2) (delineating classifications including "F–1").  For these students, their "F–1 status" dictates whether they are lawfully present in the United States.  They are permitted to remain here for the "duration of status," which is "the time during which an F–1 student is pursuing a full course of study" at an educational institution certified by DHS's Student and Exchange Visitor Program ("SEVP"), or "engaging in authorized practical training following completion of studies."[3]  8 C.F.R. § 214.2(f)(5)(i).

Statute dictates when F–1 status holders may lose status *before* completing their course of study.  First, a student may fail to 'maintain status' by (1) not making "normal progress toward completing a course of study," *id.*; (2) engaging in "unauthorized employment;" (3) "willful[ly] fail[ing] to provide full and truthful information requested by DHS;" or (4) receiving a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed," 8 C.F.R § 214.1(e)–(g).  Second, the government may terminate an individual's F–1 status by (1) revoking a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4); (2) introducing "a private bill to confer permanent resident status" on the individual; or (3)

---

[2] A nonimmigrant is an individual who has "a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study."  8 U.S.C. § 1101(a)(15)(F)(i).
[3] Authorized practical training includes participation in Optional Practical Training ("OPT").  8 C.F.R. § 214.2(f)(10)(ii).

after notification in the Federal Register, terminating a student's F–1 status "on the basis of national security, diplomatic, or public safety reasons." *Id.* § 214.1(d).

To maintain F–1 status, students must comply with the requirements of their visa classification under 8 C.F.R. § 214.2(f). However, F–1 *status* is different than an F–1 *visa*, which is the document that allows a student to *enter* the United States, whereas F-1 *status* refers to the student's formal immigrant classification once they enter the country. Students and Employment, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment (last visited May 30, 2025); Maintaining Status, https://studyinthestates.dhs.gov/students/maintaining-status (last visited May 30, 2025). Notably, even if a student's F–1 visa expires, they can remain in the United States lawfully if they have F–1 status. Mot. for TRO at 4–5 (citing 22 C.F.R. § 41.122). On the other hand, if they were to leave the country, they would not be able to return. *See id.*

The Department of Homeland Security monitors F–1 students through the Student and Exchange Visitor Information System ("SEVIS"). SEVIS is a record system maintained by ICE that DHS uses to track information on SEVP-certified schools and F–1 students. Ex. A ¶ 3, Decl. of Michelle Young, ECF No. 25-1 ("Young Decl.").

SEVIS serves a number of important functions: SEVP-certified schools must issue Form I–20s—the physical proof of a student's F–1 status—through SEVIS. 8 C.F.R. § 214.2(1)(iii). They also use SEVIS records to track students' compliance with their program requirements. *Id.* § 214.3 (DHS certification and recertification of schools for enrollment of F–1 nonimmigrant students). Further, government agencies other than ICE refer to SEVIS records when a nonimmigrant interfaces with the government. *See* Young Decl. ¶ 5.

### B. Factual and Procedural Background

The named plaintiffs in this matter are F–1 nonimmigrants pursuing doctoral degrees or participating in Optional Practical Training at Connecticut universities. Compl. ¶¶ 1–2. Plaintiff Stephen Azu, a citizen of Ghana, is employed in a 12-month OPT at the University of Connecticut's ("UConn") Goldenson Center for Actuarial Science. Pls.' Mot. at 13–14. Plaintiffs Yan Du and Mengni He are Chinese nationals pursuing Ph.Ds in chemical and environmental engineering and experimental pathology, respectively, at Yale University. *Id.* at 8–12. And Plaintiff Elika Shams, a citizen of Iran, is pursuing a Ph.D in biomedical engineering at UConn. *Id.* at 10. None of the Plaintiffs has been convicted of a crime that would warrant the termination of their F–1 status, though each either has received a traffic violation or has had their visa canceled and later reinstated.[4]

Plaintiffs' SEVIS records, along with the records of dozens of others, were terminated by ICE without explanation in March and April 2025. Compl. ¶¶ 1–2; Ex. B ¶ 4, Decl. of Andrew Watson, ECF No. 25-2 ("Watson Decl."). When their records were terminated, each plaintiff was under the impression that they were in compliance with the requirements of F–1 status, and received no notice to the contrary from ICE. *See* Pls.' Mot. at 8–15. Instead of being notified about the SEVIS record terminations by DHS or another government agency, Plaintiffs were notified by their respective schools. Ex. 6, Email to Du, ECF No. 2-6; Ex. 9, Email to Shams, ECF No. 2-9; Ex. 12, Email to He, ECF

---

[4] Plaintiff Shams had a prior F–1 student visa canceled by Customs and Border Patrol based on a misunderstanding that was later resolved. Compl. ¶ 54. In 2024, she was issued a warning from TSA after she got into a dispute with a Frontier Airlines staff member (Frontier later issued an apology to Ms. Shams). Pls.' Mot. at 10–11. Plaintiff He received a non-criminal traffic violation in 2016. Compl. ¶ 69. Around that time, her visa was revoked, though it was later reinstated. *Id.* ¶ 70. Plaintiff Azu has received three traffic violations since 2022, including one speeding and one parking ticket. *Id.* ¶¶ 80–81. In 2022, Plaintiff Du's F–1 status was mistakenly terminated due to a miscommunication with Yale, though it was restored by the end of the year. *Id.* ¶ 40.

No. 2-12; Ex. 15, Email to Azu, ECF No. 2-15.  On SEVIS, the reason reported for each termination was "OTHER: Individual identified in criminal records check and/or has had their VISA revoked."  Pls.' Mot. at 15.

It remains unclear why Plaintiffs' records were terminated by ICE.  Defendants have not provided the court with any justification for their actions.  Based on the parties' submissions and oral arguments, it seems likely that Plaintiffs were identified by ICE as having F–1 status as well as an entry in the National Crime Information Center ("NCIC") database.  *See* Defs.' Opp. 3–4, ECF No. 25 ("Opp.").

On April 24, 2025, Plaintiffs filed a complaint claiming that Defendants violated the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment to the United States Constitution.[5]  Compl. ¶¶ 97–103.  They alleged that Defendants unlawfully terminated Plaintiffs' F–1 status and their F–1 records in SEVIS.  *Id.* ¶ 1.  The same day, they filed a motion for injunctive relief, seeking an order "keeping the parties at their pre-termination peaceable status until the Court issues a final judgment in this action."  Pls.' Mot. at 3.

Between April 24 and April 28, ICE reinstated the SEVIS records of the named plaintiffs and the putative class members.  Opp. at 2–3 n.2; Watson Decl. ¶¶ 4–5.  This took place before this court issued a TRO, but after courts across the country granted dozens of TROs in lawsuits brought by other individuals whose SEVIS records were terminated.[6]

---

[5] Plaintiffs bring this complaint on behalf of themselves and other affected F–1 students at Connecticut academic institutions, and they seek to certify themselves as a class. Plaintiffs filed an Emergency Motion to Certify a Class under Federal Rule of Civil Procedure 23(b)(2).  Pls.' Emergency Mot. for Class Certification 15, ECF No. 3.

[6] *See, e.g.*, *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) (granting TRO on April 17); *Oruganti v. Noem*, No. 2:25-CV-00409-ALM-EPD, 2025 WL 1144560 (S.D. Ohio Apr. 18, 2025) (granting a TRO on April 18); *Shaik v. Noem*, No. CV 25-1584 (JRT/DJF), 2025 WL

Notwithstanding reinstatement of Plaintiffs' records—indeed, the court was not notified of this development—the court issued an *ex parte* TRO as to the named Plaintiffs on April 28, 2025. TRO at 12. The order directed Defendants to reinstate Plaintiff's F–1 status retroactively to the date of termination and enjoined them from taking any further action to terminate Plaintiffs' F–1 status or to remove them from the District of Connecticut and the United States. *Id.* The court scheduled a hearing to allow the parties to argue whether the terms of the TRO should be converted into a preliminary injunction. *Id.*

On May 12, 2025, Defendants filed a response to Plaintiffs' motion for injunctive relief. They argued that "Plaintiffs are no longer likely to suffer the immediate irreparable harm identified by the [c]ourt" because Defendants have reactivated Plaintiffs' SEVIS records, therefore, conversion of the TRO into a preliminary injunction is unnecessary. Opp. at 2. Furthermore, Defendants argue that Plaintiffs "conflate" the termination of SEVIS records with the termination of an individual's F–1 status. *Id.* at 1 n.1. They

---

1170447 (D. Minn. Apr. 22, 2025) (granting a TRO on April 22); *Ratsantiboon v. Noem*, No. 25-CV-01315 (JMB/JFD), 2025 WL 1118645 (D. Minn. Apr. 15, 2025) (granting a TRO on April 15); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025) (granting a TRO on April 15); *Student 1 v. Noem*, Case No. CV-25-2871 (GC) (JTQ), Docket No. 11 (D.N.J. April 23, 2025) (granting a TRO on April 23); *Ariwoola v. Noem*, No. 3:25-CV-03313-JDA, 2025 WL 1148491 (D.S.C. Apr. 18, 2025) (granting TRO on April 18); *Saxena v. Noem*, No. 5:25-CV-05035-KES, 2025 WL 1149498 (D.S.D. Apr. 18, 2025) (granting TRO on April 18); *Hinge v. Lyons*, No. CV 25-1097 (RBW), 2025 WL 1134966 (D.D.C. Apr. 15, 2025) (granting TRO in part on April 15); *Doe v. Noem*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) (granting a TRO on April 17); *Daou v. Noem*, No. 8:25-CV-976-MSS-AEP, 2025 WL 1148687 (M.D. Fla. Apr. 18, 2025) (granting a TRO on April 18); *Ajugwe v. Noem*, No. 8:25-CV-982-MSS-AEP, 2025 WL 1148689 (M.D. Fla. Apr. 18, 2025) (granting a TRO on April 18); *Chen v. Noem*, No. 25-CV-03292-SI, 2025 WL 1150697 (N.D. Cal. Apr. 18, 2025) (granting *ex parte* TRO on April 18); *Chen v. Noem*, No. 1:25-CV-00733-TWP-MG, 2025 WL 1163653 (S.D. Ind. Apr. 21, 2025) (granting a TRO on April 21); *Madan B. K. v. Noem*, No. 1:25-CV-419, 2025 WL 1171572 (W.D. Mich. Apr. 23, 2025) (granting a TRO on April 23); *Alduaij v. Noem*, No. 2:25-CV-00538, 2025 WL 1180743 (W.D. Pa. Apr. 23, 2025) (granting a TRO on April 23); *Kapatel v. Bondi*, Case No. 1:25cv103, Docket No. 10 (W.D. Pa. Apr. 21, 2025) (granting a TRO on April 21); *Patel v. Bondi*, No. 1:25-CV-00101, 2025 WL 1134875 (W.D. Pa. Apr. 17, 2025) (granting a TRO on April 17); *Doe 1 v. Bondi*, No. 1:25-CV-01998-VMC, 2025 WL 1188469 (N.D. Ga. Apr. 18, 2025) (granting TRO on April 18); *Doe v. Noem*, No. 3:25-CV-00023, 2025 WL 1161386 (W.D. Va. Apr. 21, 2025) (granting a TRO on April 21); *W. B. v. Noem*, No. 25-CV-03407-EMC, 2025 WL 1180296 (N.D. Cal. Apr. 23, 2025) (granting a TRO on April 23); *Yang v. Noem*, No. 25-CV-292-WMC, 2025 WL 1166521 (W.D. Wis. Apr. 22, 2025) (granting a TRO on April 22); *Isserdasani v. Noem*, No. 25-CV-283-WMC, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025) (granting a TRO in part on April 14).

maintain that ICE did not terminate Plaintiffs' F–1 nonimmigrant status, rather, it terminated the digital record of Plaintiffs' status on SEVIS.  *Id.*  In support of their arguments, Defendants submitted declarations from Michelle Young, Associate Portfolio Director of Service Center Operations at U.S. Citizenship & Immigration Services ("USCIS"), and Andrew Watson, Assistant Director at Homeland Security Investigations at ICE.  Young Decl.; Watson Decl.

Plaintiffs filed a reply on May 15, Reply to Opp., ECF No. 29 ("Reply"), and on May 16, the court conducted a hearing at which the parties argued whether the TRO's terms should be converted into a preliminary injunction.  At the hearing, the court extended the TRO pending its written decision on Plaintiffs' motion for a preliminary injunction.

Less than one week after the hearing, a court in the Norther District of California granted a nationwide injunction prohibiting Defendants from taking adverse action against individuals whose SEVIS records were terminated.  *Doe v. Trump*, No. 25-CV-03140-JSW, 2025 WL 1467543 (N.D. Cal. May 22, 2025).  Specifically, Defendants are enjoined from (1) arresting and incarcerating affected individuals; (2) transferring affected individuals from outside the jurisdiction of their residence; (3) imposing any adverse legal effect that may be caused by SEVIS record termination on affected individuals; and (4) reversing the reinstatement of the SEVIS record of any affected individuals.  *Id.* at 12.

II. <u>**LEGAL STANDARD**</u>

The purpose of a preliminary injunction is to preserve the status quo, or "the relative positions of the parties," pending a final determination on the merits of the case.  *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37–38 (2d

Cir. 2018) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  It is "an extraordinary remedy" that is "never awarded as of right."  *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Before the court grants a preliminary injunction, the plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest."  *See New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20).  The balance of equities and public interest elements merge where, as here, the government is sued.  *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020).

In the Second Circuit, "the single most important prerequisite" to a preliminary injunction is a showing of irreparable harm.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999)).  Irreparable harm is "an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'"  *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  Moreover, a plaintiff must demonstrate that irreparable injury is not merely possible but *likely* in the absence of a preliminary injunction.  *Kreger v. McCance*, 537 F. Supp. 3d 234, 240 (D. Conn. 2021) (citing *Winter*, 555 U.S. at 22).

## III. DISCUSSION

### A. Irreparable Harm

Irreparable harm is "an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). A plaintiff must demonstrate that irreparable injury is not merely possible but *likely* in the absence of a preliminary injunction. *Kreger v. McCance*, 537 F. Supp. 3d 234, 240 (D. Conn. 2021) (citing *Winter*, 555 U.S. at 22).

Defendants argue that Plaintiffs' request for a preliminary injunction is moot because Plaintiffs are "no longer likely to suffer" immediate irreparable harm. *See* Opp. at 2. In support, they cite the following: (1) ICE reactivated Plaintiffs' SEVIS records; (2) pursuant to ICE's new policy, it will not re-terminate Plaintiffs' SEVIS records based solely on the NCIC records that led to the initial termination, nor will it re-terminate them based on related prudential visa revocation; and (3) USCIS has "confirmed" that it does not equate SEVIS record termination with termination of F–1 status. *See id.* at 2–3; *see* Ex. 5, April 26 SEVP Personnel Broadcast Message, ECF No. 29-5 ("April 26 Policy").

Defendants reiterated this argument on the record at the hearing on May 16, 2025, emphasizing that ICE's original justification for terminating Plaintiffs' SEVIS records will not be used 'as the sole basis' for future termination of records. They also argued that the relief Plaintiffs originally sought has been provided in large part.

The court disagrees with Defendants argument for the following reasons.

### i. *Cessation of Challenged Conduct*

A defendant's voluntary cessation of challenged conduct does not "ordinarily render a case moot." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (internal citation omitted). This is because "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Knights of Columbus Council 2616 v. Town of Fairfield*, No. 3:22-CV-1579 (AWT), 2024 WL 3900102, at *7 (D. Conn. Aug. 22, 2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Under these circumstances, an injunction provides "effectual relief because it precludes the defendant from reviving the challenged conduct." *Am. Freedom Def. Initiative*, 815 F.3d at 109 (internal quotation marks omitted). Accordingly, a court only will find a matter moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal citation and quotation marks omitted).

Defendants have not met their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603–04 (2d Cir. 2016) (internal citation and quotations marks omitted). In the Second Circuit, courts have credited a government entity's representation that a violation will not recur in instances where the entity "adopted a formal policy, regulation, or law which, by its adoption, redressed the harm alleged." *Saba v. Cuomo*, 535 F. Supp. 3d 282, 295–96 (S.D.N.Y. 2021) (citing cases). This is because, if a government entity has taken official action to rescind an unlawful policy, the violation *cannot* recur without further governmental action. *See id.*

Here, Defendants refer to a new SEVIS policy issued on April 26, 2025, in support of their claim that the challenged conduct will not recur (hereinafter the "April 26 Policy"). *See* Opp. at 3; *see* Watson Decl. ¶ 6. They argue that the new policy demonstrates "ICE has no plans to re-terminate the student(s) SEVIS record" solely based on the same reasons that led to the initial termination. Opp. at 3.

Plaintiffs counter that the April 26 Policy "implies that Defendants may once again terminate Plaintiffs' SEVIS records without notice or a hearing." Reply at 10. They also point out the confusion among courts as to whether the policy "endorses immediate termination of a SEVIS record based on visa revocation." *Id.* at 10–11 (citing *Vyas v. Noem*, No. CV 3:25-0261, 2025 WL 1351537, at *7 (S.D.W. Va. May 8, 2025)).

The April 26 Policy does not persuade the court that the alleged violation will not recur. First, it is important to distinguish the type of violation that the court—and Plaintiffs—expect a preliminary injunction to bar, versus the type of violation that Defendants imagine. Here, a preliminary injunction should protect Plaintiffs from Defendants re-terminating their SEVIS records in any manner that violates the APA. *See N. Am. Soccer League, LLC*, 883 F.3d at 36 (explaining that prohibitory preliminary injunctions are meant to "maintain the status quo pending resolution of the case"). By contrast, Defendants appear to argue that a preliminary injunction should merely prevent re-termination of Plaintiffs' records on the same narrow basis originally invoked by Defendants. *See* Opp. at 2. Thus, Defendants' argument is based on an overly narrow interpretation of the type of harm from which Plaintiffs are entitled to injunctive relief.

Consequently, the April 26 Policy clearly does little to ensure that the challenged conduct will not recur. Taking the new policy at face value, ICE will not terminate Plaintiffs'

11

F–1 records based solely on the same challenged basis it originally invoked. *See* Watson Decl. ¶ 6 ("ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination"). This leaves open the glaring possibility that, absent a preliminary injunction, ICE may invoke a new (but still improper) justification to terminate Plaintiffs' records in the future.

Forcing litigants and the court to play a figurative game of whack-a-mole is precisely what the voluntary cessation doctrine seeks to prevent, particularly with the stakes as high as Plaintiffs see them. *See Town of Fairfield*, 2024 WL 3900102, at *7. Therefore, despite ICE's alleged policy change, Plaintiffs have a reasonable expectation that the alleged violation will recur. This conclusion is echoed by three of our sister courts, and another court in this district, which issued preliminary injunctions in analogous cases. *See, e.g.*, *Parra Rodriguez v. Noem, et al.*, No. 3:25-CV-616 (SRU), 2025 WL 1284722, at *9 (D. Conn. May 1, 2025) ("Defendants' voluntary reinstatement of [plaintiff's] SEVIS record does not show her SEVIS record termination cannot 'reasonably be expected to recur.'"); *B. K. v. Noem*, No. 1:25-CV-419, 2025 WL 1318417, at *9 (W.D. Mich. May 7, 2025) (finding Defendants' "discretionary" restoration of Plaintiffs' SEVIS records did not demonstrate that the challenged conduct would not recur); *Isserdasani v. Noem*, No. 25-CV-283-WMC, 2025 WL 1330188, at *8 (W.D. Wis. May 7, 2025) (finding that Plaintiff faced irreparable harm even though his SEVIS record was reinstated by Defendants); *Doe et al v. Noem et al*, No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503, at *13 (D.N.J. May 8, 2025) (finding declarations from Michelle Young of USCIS and Andrew Watson of ICE "fail to undercut the record of ongoing and irreparable harm that Plaintiffs have marshaled").

The next inquiry is whether Defendant's remedial actions have completely and irrevocably eradicated the effects of the alleged violation. *Am. Freedom Def. Initiative*, 815 F.3d at 109 (internal citation and quotation marks omitted). Defendants emphasized during the May 16 hearing that irreparable harm 'doesn't exist' now that Plaintiffs' records were retroactively restored. The court disagrees.

Defendants' initial termination has caused ongoing harm to the "data hygiene" of Plaintiffs' SEVIS records. Data hygiene refers to the accuracy and reliability of a person's data on a given platform. *See* Danielle Keats Citron & Daniel J. Solove, *Privacy Harms*, 102 B.U. L. Rev. 793, 841 (2022). When a person's data is polluted with misleading or incorrect information, it can be disseminated and indexed across the Internet in a manner that is unpredictable and difficult to address. *Id.* ("It can be hard for individuals to find out about errors, and, when they do, third parties will ignore requests to correct them without the real risk of litigation costs.").

Plaintiffs argue that they continue to suffer irreparable injuries because their data on SEVIS is tarnished by Defendants' actions. The court agrees. Defendants allege that there is no gap in Plaintiffs' records on SEVIS since ICE reactivated them "retroactive to the date of the initial termination." Opp. at 3. Yet as of May 16, there was a gap in Plaintiffs' F–1 records on the SEVIS platform. ECF Nos. 29-1–29-4. Each Plaintiff's profile showed that their record had been terminated in April and that the reasoning was related to being identified in a criminal records check or visa revocation. To date, there is no filing on the docket suggesting this has changed.

Accordingly, the court finds that Defendants have not met their burden to demonstrate that they will not repeat the alleged unlawful conduct.

### ii. *F–1 Records versus F–1 Status*

Additionally, in support of their position that Plaintiffs are not at risk of irreparable injury, Defendants argue that "a termination of an individual's status in SEVIS does not terminate an individual's F–1 nonimmigrant status." Opp. at 1 n.1; Young Decl. ¶ 7 ("USCIS does not equate SEVIS record termination with termination of an alien's F–1 nonimmigrant status.").

Another court in this district recently rejected this line of argument in a similar case. *Parra Rodriguez*, 2025 WL 1284722, at *9. It pointed out that Defendants make this claim "without any legal citation," and that the proposition "runs counter to what Defendants argue is the purpose of SEVP and SEVIS records." *Id.* The court noted that Defendants' "own policy" indicates that "[o]nce a SEVIS record is terminated, ICE has the discretion to investigate and 'initiate removal proceedings pursuant to INA § 237(a)(1)(C)(i) based on evidence that a nonimmigrant student is not complying with the terms of their nonimmigrant status.'" *Id.* (quoting April 26 Policy at 3). Therefore, the "assertion that terminating a SEVIS record does not affect a nonimmigrant's legal status rings hollow," because "SEVIS records are how Defendants monitor a nonimmigrant student's legal status." *Id.* (citing Foreign Affairs Manual 402.5-4(B)).

The undersigned agrees with this reasoning and concludes that the distinction Defendants draw between record termination and status termination is not meaningful in this context. Indeed, this finding is supported by the consequences Plaintiffs faced after their SEVIS records originally were terminated, in that their universities immediately instructed them to cease coursework, research, and employment. *See, e.g.*, Email to Shams, Ex. 9, ECF No. 2-9; Mot. for TRO at 13, 15. Indeed, during the May 16 hearing,

Plaintiffs' counsel explained that Plaintiffs lost weeks of work and research, one Plaintiff lost the opportunity to present their research at a conference, and another had to hand over their experiments to a colleague, due to record termination.

Thus, the court concludes that Plaintiffs remain likely to suffer irreparable harm absent a preliminary injunction.

### B. Likelihood of Success on the Merits

To warrant a preliminary injunction, Plaintiffs must demonstrate that they are likely to prevail on the merits of their claim, or that they raise "sufficiently serious questions going to the merits" of their claim. *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004). Plaintiffs do not need to show that there is a likelihood of success on the merits of *all* of their claims, rather, they need only show a likelihood of success on the merits of at least one claim. *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018).[7] Defendants did not address this element in their brief, *see* Opp. at 1–4, therefore the court will briefly restate the conclusions it drew in the TRO.

Plaintiffs raise serious questions about whether Defendants violated the Administrative Procedure Act ("APA") by terminating SEVIS records without a statutory basis. TRO at 8–10. Under the APA, individuals "suffering legal wrong because of agency action" are entitled to judicial review, 5 U.S.C. § 702, provided that the action in question is "final agency action," 5 U.S.C. § 704. This court, like other courts, concludes that the termination of Plaintiffs' SEVIS records was a final agency action. *See Parra*

---

[7] The standard of review depends on whether a plaintiff seeks a prohibitory injunction or a mandatory injunction. *N. Am. Soccer League, LLC*, 883 F.3d at 36–37. Here, the court finds that the order sought is a prohibitory injunction, not a mandatory injunction, therefore Plaintiffs need not show a "substantial" likelihood of success on the merits. *See Parra Rodriguez*, 2025 WL 1284722, at *11 (the "requested relief maintains the status quo because it restores her SEVIS record and F–1 status to 'the last peaceable uncontested status preceding the present controversy.'" (internal citation omitted)).

15

*Rodriguez*, 2025 WL 1284722, at *7; *Student 1 v. Noem*, No. CV 25-2871 (GC) (JTQ), 2025 WL 1431186, at *7 n.12 (D.N.J. May 19, 2025); *Isserdasani v. Noem*, 2025 WL 1330188, at *7; *Patel v. Bondi*, No. 1:25-CV-00101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); *Doe 1 v. Bondi*, No. 1:25-CV-01998-VMC, 2025 WL 1188469, at *3 (N.D. Ga. Apr. 18, 2025).

Because Defendants' actions constitute a final agency action, it is within the court's purview to evaluate whether the SEVIS record termination was authorized. The record reveals no facts supporting the finding that the agency-initiated termination of status was authorized by statute or regulation. Additionally, Defendants do not argue that there was a statutory or regulatory basis for the termination. *See* Opp. at 1–4.

Therefore, the court finds that Plaintiffs have raised sufficiently serious questions going to the merits of their APA claim.

### C. Balance of Equities & Public Interest

Lastly, the court considers whether the balance of equities weighs in the plaintiffs' favor and whether an injunction is in the public interest. *See New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020). Defendants did not address this element in their brief, *see* Opp. at 1–4, therefore the court will briefly restate the conclusions it drew in the TRO.

Here, the public interest weighs in favor of injunctive relief because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotations and citation omitted). Indeed, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and

operations." *Id.* In *Isserdasani v. Noem*, the court noted that, "although defendants have argued that 'the public interest in enforcement of United States immigration laws is significant,'" they failed to show that DHS "complied with immigration laws or regulations." *Isserdasani v. Noem*, 2025 WL 1330188, at *9.

It is also in the public interest to prevent the "potential chilling of international student enrollment" in American universities. *See Doe v. Noem*, 2025 WL 1134977, at *8. Defendants' actions have created an uncertain and chaotic environment for individuals with F–1 status (or at least furthered the general national climate) and a preliminary injunction would uphold the integrity of this program.

Finally, the balance of equities weighs heavily in the plaintiffs' favor. Granting Plaintiffs injunctive relief will "do nothing" to hinder Defendants' ability to enforce immigration laws or administer SEVP. *See Parra Rodriguez*, 2025 WL 1284722, at *10 ("[G]ranting Parra Rodriguez the relief she requests will do nothing to prevent Defendants from continuing to 'develop and administer' SEVP"). None of the plaintiffs has any criminal convictions, nor does any one of them arguably pose an articulable threat to the community (nor to any specific person within it). In contrast, without injunctive relief, Plaintiffs' SEVIS records remain in jeopardy, which threatens their lawful status, their liberty, and their academic and professional opportunities.

In sum, the court finds that the balance of factors supports granting a preliminary injunction, pending adjudication of the merits of Plaintiffs' claims.

### D. Nationwide Injunction

The court's instant order intersects with the nationwide injunction imposed in the Northern District of California on May 22, 2025. *See Doe v. Trump*, 2025 WL 1467543.

However, the court's ruling here is independent of that injunction and will remain in effect according to the terms described below.

IV. **CONCLUSION**

For the reasons discussed herein, it is **ORDERED**:

1. Plaintiffs' motion for a preliminary injunction (ECF No. 2) is **GRANTED** as to Plaintiffs Yan Du, Elika Shams, Mengni He, and Stephen Azu.

    a. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert with them, hereby are enjoined from terminating Plaintiffs' F–1 records from the Student and Exchange Visitor Information System ("SEVIS") without further showing and approval by this court;

    b. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert with them, hereby are enjoined from revoking Plaintiffs' Optional Practical Training ("OPT") employment authorizations; and

    c. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert with them, hereby are enjoined from arresting, detaining, or transferring Plaintiffs out of the jurisdiction in which they are located, or ordering the arrest, detention, or transfer of Plaintiffs out of the jurisdiction where they are located, without first providing adequate notice to this Court and to Plaintiffs' counsel, and the opportunity to contest any such action.

2.  The court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time.

3.  This Preliminary Injunction shall be effective immediately and shall remain in effect until further order of the court.

**IT IS SO ORDERED** in Hartford, Connecticut, this 31st day of May, 2025.

>					/s/
>					OMAR A. WILLIAMS
>					UNITED STATES DISTRICT JUDGE